Robert HERMAN, Plaintiff,

v.

KVAERNER OF PHILADELPHIA SHIPYARD, INC., Defendant.

Civil Action No. 05–CV–475.

United States District Court, E.D. Pennsylvania.

Nov. 8, 2006.

334

Jeffrey P. Hoyle, Media, PA, for Plaintiff.

Nancy A. Conrad, White and Williams LLP, Allentown, PA, Tanya A. Salgado, Brian W. Waerig, White and Williams LLP, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

### I. Introduction

Plaintiff Robert Herman filed this law suit in February, 2005. Herman has diabetes and contends that he has a "disability," as defined under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et. seq. Herman alleges that defendant Kvaerner Shipyard of Philadelphia, Inc. ("Kvaerner" or "defendant") terminated his position in May 2004 because of his disability or because he was "regarded as" disabled, in violation of the ADA, and that Kvaerner failed to provide him with a reasonable accommodation. I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331. I find that Herman has adduced sufficient evidence to demonstrate the existence of genuine issues of material fact as to whether he has an impairment that substantially limits one or more major life activities, whether Kvaerner's stated reason for the termination was pretextual, and whether Kvaerner failed to provide him with a reasonable accommodation. However, I find that Herman has failed to meet his burden with regard to his claim that Kvaerner terminated his position because it regarded him as disabled. Accordingly, I deny in part and grant in part Kvaerner's motion for summary judgment.

### II. Genuine Issues of Material Fact Exist as to Whether Herman Has an Impairment that Substantially Limits One or More Major Life Activities

■ Under the ADA, "disability" means: "(1) a physical or mental impairment that substantially limits one or more

of the major life activities of the individual, (2) a record of such impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The case law of the United States Supreme Court and the Third Circuit establishes that the determination of whether someone is disabled is a highly fact-intensive inquiry, and that a range of impairments may constitute "disabilities." At one end of the continuum are impairments that are nearly eliminated through the use of mitigating measures. In *Sutton v. United Air Lines,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), plaintiffs were pilots with severe myopia who had applied for and were denied positions as commercial airline pilots at United Air Lines. At 475–476, 119 S.Ct. 2139. Plaintiffs used corrective glasses that largely eliminated their vision impairments. *Id.* Nonetheless, the airline contended that plaintiffs had been called in for interviews erroneously, because the airline interviewed only those applicants who have an uncorrected vision of 20/100, and plaintiffs did not meet this requirement. *Id.* at 476, 119 S.Ct. 2139. Plaintiffs sued, alleging discrimination on the basis of a disability. *Id.* at 476, 119 S.Ct. 2139. The Supreme Court ruled that the finder of fact must consider the effect of mitigating measures then determining whether an individual is disabled. The Court found that plaintiffs were not disabled because, considering their use of corrective glasses, they were not substantially limited in the major life activity of working. *Id.* at 488, 119 S.Ct. 2139. The Court reasoned that plaintiffs' inability to obtain the single job of "global airline pilot" did not constitute a *substantially limiting* impairment in the activity of working. *Id.* at 493, 119 S.Ct. 2139.

On the other end of the spectrum are impairments that, even when subject to mitigating measures, leave residual limitations or produce "side-effects or other collateral limitations." *Fiscus v. Wal–Mart,* 385 F.3d 378, 386 (3d Cir.2004). In *Fiscus,* the plaintiff suffered from renal failure and underwent dialysis treatment "to cleanse and eliminate waste from her blood." *Id.* at 380. The issue before the Court was whether "renal disease" was a disability covered by the ADA. The Third Circuit ruled that cleansing blood and eliminating waste constituted a major life activity because it is " 'central to the process of life.' " *Id.* at 384 (quoting *Bragdon v. Abbott,* 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)). The Court found that whether the plaintiff was substantially limited in this major life activity depends on "her ability to conduct peritoneal dialysis but with due regard for any side-effects or residual effects." *Id.* at 386.

There is no Third Circuit authority on the question of what kind of diabetes might amount to a disability. The Supreme Court has indicated that not all diabetics are "disabled" under the law, considering corrective measures. *Sutton,* 527 U.S. at 483, 119 S.Ct. 2139. The Seventh Circuit has ruled that a person with diabetes was disabled under the ADA where the corrective measures used by the person were "multifaceted" and required "constant vigilance." *Lawson v. CSX Transportation Inc.,* 245 F.3d 916, 925 (7th Cir.2001).

The question of how limited is "substantially limited" is analogous to questions that courts have considered in other areas of employment discrimination law. The Supreme Court's analysis of the law of retaliation is instructive. In *Burlington Northern & Santa Fe Railway Co. v. White,* —— U.S. ——, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the Supreme Court addressed the question of how harmful an act of retaliatory discrimination must be in order to constitute unlawful retaliation covered by Title VII's anti-retaliation pro-

vision. 42 U.S.C. § 2000e–3(a). The Court ruled that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington*, 126 S.Ct. at 2415 (quoting *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658 (7th Cir.2005)). Acts that will dissuade reasonable workers lie on a spectrum of severity, and the law is imprecise regarding where on the continuum an act must lie for it to qualify as retaliation. When analyzing an act of retaliation, "[c]ontext matters." *Id.* at 2415. *See also Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir.2006) (applying *Burlington Northern*).

■ Similarly, determining the severity of impairment necessary to constitute a disability is a fact-intensive inquiry, and there is little absolute guidance for trial courts other than allowing the fact finder to sort out the issue. Herman has identified activities that are, as a matter of law, major life activities. Specifically, Herman identifies the activities of eating, thinking and secreting insulin sufficient to process blood glucose. Plaintiff's Answer to Defendant's Motion for Summary Judgment ("Pl.'s Answer"), p. 21. It is a question of fact whether Herman is "substantially limited" in these activities. *Williams v. Philadelphia Housing Auth. Police Dept.*, 380 F.3d 751, 753 (3d Cir.2004). Kvaerner contends that Herman has conceded he was not limited in anyway by his diabetes. *See* Defendant's Reply in Support of Motion for Summary Judgment ("Reply"), p. 8. However, Herman's answers to the questionnaire cited by Kvaerner related to his limitations on working, not his ability to engage in any other major life activity, such as eating or thinking. Defendant's Motion for Summary Judgment ("Defen-

dant's Motion"), Ex. 1, p. 252–253. In his affidavit, Herman describes severe symptoms he experiences even when he takes his insulin as prescribed. Pl's Answer, p. 23, Ex. C, ¶ 10. Plaintiff also explained at his deposition that even compliance with his treatment program does not guard against side effects. *Id.*, Ex. B, p. 76 ("And then if something does happen, which it does *even if I sit down and eat the exact same meal*, and my blood sugar starts to drop ... I'm going to take that chance.") (Emphasis added). The record reflects that Herman's doctor opined that Herman's sugar was not well-controlled after the initial introduction of insulin into Herman's treatment plan, and that Herman needed to limit his overtime during this adjustment period. *Id.*, at Ex. D–1. Kvaerner contends that Herman's affidavit "contradicts" his deposition testimony, and that I should disregard his affidavit altogether. This I will not do. As noted above, Herman's testimony regarding his ability to work does not contradict his affidavit regarding his limitations in eating, thinking, or other major life activities. Accordingly, Herman has adduced evidence sufficient to raise a genuine issue of material fact as to whether he was substantially limited in any major life activities.

## III. A Reasonable Jury Could Find Pretext

■ Even if genuine issues of material fact remain as to whether Herman is disabled, Kvaerner contends that no such factual issues remain as to Kvaerner's legitimate, nondiscriminatory rationale for terminating Herman's positions. Under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. *Id.* at 802, 93 S.Ct. 1817.

Once the plaintiff meets this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Once an employer articulates such a reason, the burden shifts back to the plaintiff to show that the stated reason is pretext for discrimination. *Id.* at 804, 93 S.Ct. 1817. "The factfinder's rejection of the employer's proffered, legitimate reason *permits* ... a verdict for the plaintiff." *Fuentes v. Perskie,* 32 F.3d 759, 764.

■ Kvaerner contends that it terminated Herman pursuant to a reduction in force ordered by upper management. Defendant's Motion at p. 28. Kvaerner asserts that Herman has no met his burden of showing that kvaerner's purported reason for termination him was pretextual. *Id.* at p. 27. Herman has, however, offered evidence to cast doubt on the plausibility of Kvaerner's rationales for terminating him. Pl's Answer, pp. 47–48. Manager Joel Sodowsky testified that Herman's habit of leaving at 3:30 p.m. was one of many factors that led management to consider terminating him. Pl's Answer, Ex. I, p. 53. Herman testified that his supervisor, Richard Anderson, harbored significant animosity toward him, that Anderson threatened to fire Herman if he did not stop leaving at 3:30 p.m. and that Anderson mocked Herman for his rising blood glucose. Pl's Answer, p. 7. Additionally, Anderson specifically recommended that Herman be terminated over the other planner in the prefabrication department, Roy Buhrman, whom Sodowsky otherwise would have selected for termination. Pl's Answer, Ex. I, p. 73. Finally, there is evidence indicating that Herman possessed the very skill set that Kvaerner purportedly sought to preserve by retaining Buhrman over Herman. Pl's Answer, p. 16. As such, a reasonable jury could disbelieve Kvaerner and find that Anderson's alleged malice towards Herman was the real reason for Herman's termination. Accordingly, plaintiff has adduced evidence that could "cast substantial doubt" on defendant's articulated reason for selecting him for termination. *Fuentes,* 32 F.3d at 765.

## IV. Genuine Issues of Material Fact Exist as to Herman's Reasonable Accommodation Claim

■ Herman's second claim is that he requested and was denied a reasonable accommodation by Kvaerner. To prevail on a claim for denial of a reasonable accommodation, a plaintiff must show: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the plaintiff in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the defendant's lack of good faith." *Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 312 (3d Cir.1999). The touchstone of the law of reasonable accommodations in the Third Circuit is the requirement that an employee initiate and engage in an "interactive process" with the employer regarding the employee's need for an accommodation. *Williams v. Philadelphia Housing Auth.,* 380 F.3d 751, 772 (3d Cir.2004). Although the employee bears the burden of informing the employer as to his or her disability and initiating the interactive process, the employer must participate in the process in good faith. *Id.* The employee need not request a specific accommodation in order to meet his or her burden. *Armstrong v. Burdette Tomlin Memorial Hosp.,* 438 F.3d 240, 248 (3d Cir.2006).

■ Kvaerner argues that Herman never requested an alternative work schedule, and that if he did, he failed to participate in an ongoing interactive process with

Kvaerner management. Defendant's Motion, p. 24. However, the record contains evidence indicating that Herman informed Richard Anderson about his diabetic condition and his inability to stay passed 3:30 p.m. because of his need to inject his insulin and eat shortly after the injection. Pl's Answer, p. 42; Defendant's Motion, Ex. 1, p. 96. Even if plaintiff did not ask for an alternative work schedule or other specific accommodation, there is a genuine issue of fact as to whether plaintiff's supervisors were on notice as to his need for some sort of accommodation. Pl's Answer, Ex. B, p. 238. Genuine issues of material fact also remain regarding Kvaerner's responsiveness to plaintiff's need for an alternative work schedule. Accordingly, I deny summary judgment as to plaintiff's reasonable accommodation claim.

## V. Summary Judgment is Proper on Herman's "Regarded As" Claim

 Herman's assertion that Kvaerner terminated his position because it regarded him as disabled fails. To prevail on a "regarded as" claim, a plaintiff must show: (1) the plaintiff had a physical or mental impairment that did not substantially limit his or her ability to perform specific major life activities, but was treated by defendant as having an impairment that did so limit his or her ability to perform that activity; or (2) the plaintiff had an impairment that was substantially limiting in his or her ability to perform specific major life activities only because of the attitudes of others toward the impairment; or (3) that the plaintiff did not have any impairment, but defendant treated him or her as having an impairment that substantially limited plaintiff's ability to perform specific major life activities. 29 C.F.R. § 1630.2(*l*). Herman cannot prevail on any of these theories.

 Herman contends that the defendants knew of his diabetic condition and fired him because they perceived him as "precluded [ ] from a wide range of jobs because of [his] professed inability to work beyond 3:30 p.m." Pl's Answer, p. 37. However, Kvaerner cites persuasive authority for the proposition that the inability to work overtime is, on its own, insufficient to constitute a "substantial limitation" on a major life activity. *See Tardie v. Rehabilitation Hospital of Rhode Island, et al.,* 168 F.3d 538, 542 (1st Cir.1999) (inability to work overtime not a substantial limitation on the major life activity of working). The *Tardie* Court reasoned that the inability to work overtime is not substantially limiting, because a number of jobs do not require more than a 40–hour work week. Accordingly, *even if* Kvaerner (mis)perceived Herman as unable to work overtime, this would not constitute Kvaerner "regarding" Herman as disabled, i.e., substantially limited in a major life activity. Fundamentally, Herman fails to grasp that an adverse action by Kvaerner based on the company's erroneous perception that Herman was unable to work longer hours or after 3:30 p.m. is not actionable because the limitations his employers allegedly perceived, i.e., limitations on one's ability to work late or work extra hours, do not substantially limit any major life activity. An employer may legitimately prefer an employee who can work longer hours over one who cannot. *See Sutton,* 527 U.S. 471, 490, 119 S.Ct. 2139, 144 L.Ed.2d 450 ("Accordingly, an employer is free to decide ... that some limiting, but not *substantially* limiting, impairments make individuals less than ideally suited for a job.") [1]

---

**1.** To be clear, *Tardie* does not undermine

Herman's claim that he was terminated be-

Plaintiff contends that the discussion of the major life activity of working is a "straw man" used by defendant to avoid addressing the major life activities of eating and thinking. Pl's Answer, p. 38. However, this argument is misplaced in the context of a "regarded as" claim: the issue is the *employer's perceptions* and not Herman's *actual limitations*. *See Kelly v. Drexel University*, 94 F.3d 102, 108–109 (3d. Cir.1996) (focus of "regarded as" claim is employer's perceptions). Contrary to his assertions, Herman has pointed to no evidence to suggest that he was "regarded as" substantially limited in the major life activities of eating and thinking, and that his position was terminated because of these perceived limitations in eating and thinking. Pl's Answer, p. 29, 38; *see also* p. 7, Ex. B at pp. 136–138. Absent evidence that Kvaerner personnel perceived Herman as substantially limited in the major life activities of eating or thinking, Herman's "straw man" critique fails. *Cf. Kelly*, 94 F.3d at 109 ("Moreover, we find that the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action.") Ultimately, Herman has failed to adduce evidence indicating the existence of any genuine issue of material fact regarding whether Kvaerner incorrectly regarded him as disabled. *Cf. Deane v. Pocono Medical Center*, 142 F.3d 138, 143 n. 5 (3d Cir.1998) ("The limited legislative history also confirms that Congress's primary concern in enacting the 'regarded as' prong of the ADA was for individuals with no limitations but who, because of some non-limiting impairment, are pre- vented from obtaining employment as a result of societal prejudices."). Therefore, Herman's "regarded as" claim cannot survive summary judgment.

AND NOW, on this _ 8TH ___ day of November, 2006, defendant's motion for summary judgment (Doc. # 20) is **GRANTED** in part and **DENIED** in part.

cause of an actual disability. A reasonable jury could find that Herman was substantially limited in major life activities other than working, such as eating, and that Herman's numerous limitations include, but are not limited to, his inability to work longer hours.